MOORE *v.* STATE.*

(Division B.   Nov. 8, 1926.)

[110 So. 216.   No. 25957.]

1. CRIMINAL LAW. *Where all facts of killing were fully testified to, refusal of continuance because of absence of sick witness, whose evidence would only go to show effect of blows and threats by deceased, was not error.*

A motion for a continuance on the ground of an absent sick witness, where the character of the killing is witnessed by numerous people, may be overruled where the evidence of the absent witness would only go to show the effect of blows on the accused and of

threats by the deceased, where all the facts of the killing are
fully testified to by the witnesses in attendance.

2. CRIMINAL LAW. *Charge that defendant, though smaller and older
than deceased and beaten without excuse, was not justified in tak-
ing life, held not erroneous, in view of instructions as to right to
defend if in danger of life or great bodily harm.*

It is not error to charge the jury for the state that the mere fact
that the defendant was a smaller man than the deceased, of less
powerful build and proportion, and of greater years, and was as-
saulted by the deceased with his fists and feet at the time of the
fatal difficulty, and was being beaten without excuse or provoca-
tion, does not and cannot in law excuse or justify the taking of
the life of the deceased. This is especially true where instruc-
tions for the defendant informed the jury that the defendant
had the right to use a weapon where blows by fists and feet en-
dangered his life or was likely to cause great bodily harm.

---

*Corpus Juris-Cyc. References: Criminal Law, 16 C. J., p. 466, n. 82; .
p. 1053, n. 93.

APPEAL from circuit court of Attala county.
HON. W. W. MAGRUDER, special judge.
R. S. Moore appeals. Affirmed.

*Allen & Morgan,* for appellant.

I.   The court should have granted a continuance on
the showing made. The testimony of Mrs. Mary Moore,
the wife of the appellant, was very material. It was ab-
solutely impossible to show the facts as set out in the
application by any other witness and the record fully
discloses the fact that this was not shown. The theory
of the state was to the effect that Moore, the appellant,
was the aggressor.; and while the record shows almost
conclusively that he was not, yet the testimony of Misses
Myrtle Brent and Lillian Burt would have shown that
Hogue was harboring a secret grudge against the appel-
lant. This testimony was certainly material for the appel-
lant to prove in order to show conclusively that Hogue,
the deceased, was the aggressor.

If these facts were material for his defense, then the court under section 567, Hemingway's Code, abused its authority and deprived the appellant of his lawful rights. *Vollm* v. *State,* 51 So. 275; *Brooks* v. *State,* 67 So. 53.

II.   The instruction complained of is a peremptory charge for the state, and the instructions of the defendant cannot cure the fatal error.   Now what does this instruction say?   The mere fact that defendant was being beaten by the deceased with his hands and feet, without excuse of provocation, *cannot, does not,* excuse or justify the defendant in taking the life of the deceased, although smaller, older and of less powerful build than the deceased.

This instruction simply says that the instructions on pages 236 and 237 cannot be the law, and are in conflict with the law, and tells this jury that if the defendant killed the deceased who was unarmed that he *cannot* excuse himself at law for having done so.   This instruction nullifies and destroys the only defense the defendant had.

Give one party fifty instructions on the law, and give the other *one* instruction on the facts and that a peremptory, and who wins?   Juries do not frequently disregard the direct peremptory charge of the court.

*J. A. Lauderdale,* Assistant Attorney-General for the state.

I.   *The motion for a continuance.*   The facts which movant alleged the witness would testify to were immaterial and would have been merely cumulative.   There is practically no conflict in the testimony as to the number of times that Hogue struck him, and the testimony for the state shows that these blows were very severe. All of the facts at the time of the difficulty being in the testimony, the condition of Moore afterwards was immaterial.

The defendant introduced several eye-witnesses who testified to everything done by both parties from the time the first word was spoken until the men were separated. There was a large crowd present and the defendant no doubt could have obtained other eye-witnesses if he had seen fit to do so. The complete file shows that the trial court was correct in overruling the motion.

II. *Instruction No. 3 for the state.* This instruction informed the jury that the fact that the deceased was physically able to whip the defendant and was whipping or beating him at the time would not justify Moore in using a deadly weapon. This is a very correct statement of the law. *Waldrop* v. *State,* 98 Miss. 567.

The defendant requested and obtained three instructions that presented the theory of the defendant to the jury. These instructions for the state and those for the defendant, either singly or together, correctly state the law as applied to the facts in this case and the theories of the state and the defendant. *Hill* v *State,* 97 Miss. 304; *Waldrop* v. *State,* supra. The judgment of the trial court should be affirmed.

Argued orally by *C. E. Morgan,* for appellant, and *J. A. Lauderdale* Assistant Attorney-General for the state.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was indicted for manslaughter growing out of the killing of one R. L. Hogue on the school grounds in Attala county, Miss., where there was a contest between the Agricultural High School, of Leake county, and the Ethel public school, of Attala county, over a game of basket ball. It appears that the boys of the two schools had played a contest during which there had been a good deal of what is called "ragging" the referee of the said game. After this game between the boys was concluded, the deceased, who was principal of

the Ethel school, came out on the court and announced to the people assembled that there would be another game shortly between the girls of the two schools, and requested the people not to "rag" the referee, but to be quiet and courteous during the game. He stated that it was not right to treat the referee as he had been treated in the former game, whereupon the appellant said, "I 'ragged' the referee, Professor," to which the deceased replied, "I know you did, and I don't appreciate it; I wish you would either be quiet at the games or stay away from them" (or words to that effect), whereupon the appellant replied that he would go where he pleased, and the deceased said, "Yes, I will put you away." The appellant then advanced upon the deceased and told him to "put him away" then. The deceased struck the appellant with his fist over the eye, inflicting a wound from which the blood flowed freely. This blow knocked the appellant some six or eight feet away, and he drew his knife and returned to the deceased, who again struck him. They grappled, or clenched, and during this time the appellant stabbed and cut the deceased with his pocket knife, from which wounds the deceased died a few hours afterwards. When the stabbing took place the deceased wrenched himself loose and retreated, and called upon the people to stop the appellant and not let him cut him to death. The appellant followed, inquiring, "Where is he?" and stating that he intended to kill him. But he was stopped by persons assembled, and disarmed.

On the trial, the appellant made a motion for a continuance of the case upon the ground that his wife was sick and unable to attend the trial, and that she would testify, if present, that the appellant suffered greatly from the blows inflicted upon him by the deceased. He also set up as a further ground for continuance that two lady teachers in the school would, if present, testify that they had heard the deceased express ill will toward the appellant prior to the time of the difficulty, and denounce the appellant. The application did not show that these

threats and denunciations were communicated to the appellant prior to the difficulty. The proof on the motion showed that the witnesses were sick, suffering with influenza, and were unable to attend court; that it would not be safe to compel them to attend court; and that they did not attend the trial. The motion was overruled and the trial proceeded with.

It appears that the difficulty was witnessed by many people. It further appears that the deceased struck the first blow, as detailed above, under the circumstances related. It appears from the record that the deceased was a man twenty-nine years of age, and weighed from one hundred eighty to two hundred seven pounds, according to the various opinions of the witnesses testifying in reference thereto. It further appears that the appellant was a man of forty-four years of age, and weighed about one hundred forty or one hundred fifty pounds; according to his own testimony he weighed one hundred forty-three pounds.

The court, among other instructions for the state, instructed the jury as follows:

"The court charges the jury for the state that the mere fact, if it be a fact, that the defendant was a smaller man than the deceased, of less powerful build and proportions, and of greater years, and was assaulted by the deceased with his fists and feet at the time of the fatal difficulty, and was being beaten without excuse or provocation, does not and cannot in law excuse or justify the defendant in taking the life of the deceased."

The giving of this instruction and the overruling of the motion for a continuance are relied upon as errors warranting a reversal of the case.

The defendant procured the following instructions in reference to the physical disparity between the deceased and himself:

"The court instructs the jury for the defendant that if the evidence shows that the deceased was physically capable of inflicting great and serious bodily harm upon

the defendant with his feet and hands, and that the defendant had reason to believe and did believe that he was then and there in danger of such harm at the hands of the deceased, and that he cut the deceased to protect himself from such harm, then it is immaterial and makes no difference whether the deceased was armed or not at the time of the killing. *Hill* v. *State,* 94 Miss. 391, 49 So. 145.

''The court instructs the jury that, if the deceased was a much larger and stronger man than the defendant, so much so that the defendant was wholly and absolutely incapable of coping with the deceased, R. L. Hogue, in a physical combat, and had received or was liable to receive great bodily injuries at the hands of the deceased, in such combat, in an unjustifiable attack made upon him by the deceased, then the defendant was justified in using a deadly weapon to protect himself from an unjustifiable and deadly attack of the deceased, even though the deceased was wholly unarmed and the defendant was in no danger from the deceased, except such as might be inflicted by the deceased with his hands and feet.

''The court instructs the jury for the defendant that, if the evidence shows that the deceased was a much larger and stronger man than the defendant, and was capable of inflicting great and serious bodily harm upon the defendant with his hands and feet, or either, and that the defendant had reason to believe and did believe as a man of ordinary reason that he was then and there in danger of such harm at the hands of the deceased, and used his knife, with which he fatally cut the deceased, to protect himself from such harm, then the defendant was justified, and your verdict will be not guilty, even though the deceased was not armed.''

We do not think it was reversible error to refuse a continuance.

The facts with reference to the blow were testified to by a number of persons. There was no dispute of the fact that the blows were severe. The defendant himself testified as to the effect of the blows upon him as being

painful and causing great suffering. Whether the blows were dangerous or not in such sense as to warrant his resorting to a weapon was a question for the jury, and all the facts with reference thereto were fully testified to by witnesses both for the state and the defense. The wife's testimony therefore, would have been cumulative, and would not warrant us in reversing the case on that ground. Neither do we think the case should be reversed because of the absence of the two young ladies. Their testimony, if given as set out in the motion, would not have made any difference material to the result on the evidence before the jury.

We do not think the instruction for the state merits the complaint made of it.

Much was said in the argument in regard to the use of the word "mere" as calculated to mislead the jury. We do not think there is any difficulty in the average person understanding the meaning of the words used in this instruction. If there was a difference in the physical size and strength of the deceased and the appellant, that fact alone would not have justified the appellant to use a knife unless the assault was of such character as was likely to produce death or great bodily harm within the legal meaning of those terms.

The instructions given for the defendant fully informed the jury as to the right of the defendant to resort to a weapon, and all the instructions taken together are consistent with each other, and announce the law applicable to the facts.

The judgment of the court below will therefore be affirmed.

*Affirmed.*