ETHRIDGE, Chief Justice:
J. C. Tanner, appellant, was convicted in the Circuit Court of Jackson County of manslaughter and was sentenced to ten years in the state penitentiary.
The evidence amply supports the conviction. Tanner was indicted for murder, but found guilty of manslaughter. He and his wife were estranged, and his wife and children were living with his mother-in-law, a short distance from Tanner’s house. Apparently Tanner and Wayne Walker had been friends and fishing companions, but Tanner learned that Walker had been seeing his wife, and he had strong suspicions that they were having an affair. On several occasions Tanner hid himself where he could observe the house in which his wife was living.
On the day in question Tanner was at Walker’s house, when Walker stated that he was going to bait some trout lines, and began getting his fishing gear together, along with a pistol. Tanner left before Walker departed, drove to his home, and parked his car in the carport so it could not be seen. He suspected that Walker planned a clandestine meeting with his wife.
He picked up a large butcher knife, walked down the railroad track and hid at a point near the house in which his wife was staying. In the night he heard Walker come across the field and climb a fence. Soon Mrs. Tanner came out and joined Walker near the house, where they were standing close together. Tanner stood up, cried out that he saw them, and Walker dived under the house. Armed with the butcher knife, Tanner immediately followed him. During the ensuing struggle in the dark, Walker was cut five times, including a fatal stab in the heart area of the chest. Tanner then pulled Walker from under the house, obtained aid, and took him to the hospital. Upon arrival there, Walker was dead. Tanner went to the sheriff’s office and reported the killing. Tanner claimed that he followed Walker under the house because he thought Walker had a gun, and he wanted to keep Walker from shooting him. Tanner admitted that he was angry and wanted to beat Walker up, but denied that he intended to cut or kill Walker. Walker had no gun or other weapon in his possession.
From this evidence, the jury would have been justified in finding Tanner guilty of murder, but instead concluded that the offense was manslaughter. Certainly the jury was warranted in so determining.
By the same token, there is no merit in appellant’s contention that he was entitled to a peremptory instruction under the rule in the Weathersby case. Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933). It is that when a defendant is the only eye-witness to a homicide, his version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by credible witnesses or by physical facts or facts of common knowledge. Here there were material contradictions of appellant’s version by the physical facts and other evidence, including appellant’s own testimony. He told police officers about most of the above circumstances, including the facts that he armed himself in advance with the butcher knife and hid near his wife’s residence; that Walker made no overt act toward him, but ran under the house; and that he was angry and followed Walker immediately with the intent of injuring him. Moreover, the evidence reflects that Walker had no weapon in his possession, although he had left a pistol in his car some distance away.
On October 15, 1965, Tanner was arraigned and pleaded not guilty. The trial date of November 8 was agreed upon by the court and counsel, and both sides announced that they would be ready for trial at that time. On November 1, the State filed a mo *672 tion for the court to have drawn a special venire of not less than forty qualified jurors, to be returned Monday, November 8, when the case was set for trial. On November 2 the court sustained this motion and ordered a special venire, returnable on November 8.
Appellant asserts that this was error, since the special venire was drawn only six days before the trial date, rather than on October 15th, when both sides announced they would be ready for trial on November 8th.
Mississippi Code Annotated section 1795 (1956) states:
When any person charged with a capital crime * * * shall have been arraigned and the plea of not guilty entered, it shall -be the duty of the court, upon the demand of the accused or the district attorney, to cause to be drawn * * * a special venire.
Code Section 2505 provides :
Any person indicted for a capital crime shall, if demanded by him by motion in writing before the completion of drawing of the special venire, have a copy of the indictment and list of the special venire summoned for his trial delivered to him or his counsel at least one (1) entire day before said trial. * * * Miss.Code Ann. § 2505 (1964 Supp.)
Code Section 1798 provides that the laws in relation to the listing, drawing, ■summoning and impaneling of juries áre merely directory. Miss.Code Ann. § 1798 (1956). A case will not be reversed for irregularities or informalities in summoning and impaneling juries unless there is a radical departure from the statutory scheme. Smith v. State, 242 Miss. 728, 137 So.2d 172 (1962); Kouvarakis v. Hawver, 208 Miss. 697, 45 So.2d 278 (1950).
Porter v. State, 193 Miss. 774, 10 So.2d 377 (1942), held that the statute does not require that a special venire must be requested immediately on entry of a plea of not guilty, but it was said a request for it must be made when the court ascertains and announces that the case is ready for trial, regardless of the time then set for the trial. However, in the instant case, appellant was represented by counsel both before and after arraignment, whereas in Porter appellant had no counsel at the time of arraignment. Moreover, in Porter the special venire was not requested until the date set for trial. In the present case the request for a special venire was made by the State six days before the trial date.
Although the better practice would be for either side to request a special venire at the time the defendant is arraigned and pleads not guilty, the appellant here was not prejudiced by the request having been made six days before the date set for trial. Under the circumstances of this case, this would appear to be a reasonable length of time before the trial date. Code Section 2505, requiring twenty-four hours for service of requested special venire list, supports this conclusion. Nor was there any error in denying the motion for continuance on this ground, since such action will not be grounds for reversal unless this Court is “satisfied that-injustice resulted therefrom.” Miss.Code Ann. § 1520 (1956).
There was no error in the trial court’s refusal to grant defendant the instruction requested by him on disparity in size and strength between defendant and Walker. Defendant stated that he weighed 125 pounds, while Walker weighed 180-185 pounds. On the other hand, Ellzey, a county patrolman, estimated Walker’s weight to be around 160 pounds. The extent of disparity in size was a question and issue of fact. But more importantly, the requested instruction ignored the State’s evidence and, in fact, the testimony of defendant that he was the aggressor. Nor did the requested instruction require that defendant be in danger of an overt act toward him by Walker at the time. Cf. Bangren v. State, 198 Miss. 359, 22 So.2d *673 360 (1945); Moore v. State, 144 Miss. 649, 110 So. 216 (1926). This instruction is proper only where a physical combat is involved or the defendant is likely to be assaulted by the larger man. Lampkin v. State, 214 Miss. 735, 59 So.2d 335 (1952). The undisputed evidence is that defendant was assaulting Walker, and not the reverse.
Tanner went to the sheriff’s office in the courthouse and voluntarily told two officers what had happened, without any intimation of compulsion or coercion of any sort Both officers testified as to what Tanner told them about the killing, and defendant made no objection to this testimony. Yet, appellant says that this evidence was inadmissible under the Miranda case. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, Miranda applies only to cases in which the trial began after the date of the decision of the United States Supreme Court on June 13, 1966. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Hence Miranda has no application here, and, accordingly, we do not consider whether it might have otherwise applied.
Affirmed.
JONES, PATTERSON, INZER and ROBERTSON, JJ., concur.