# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-KA-00659-SCT

*JOHNNY VAUGHN a/k/a JOHNNY EASTERLING*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/10/96 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | A. RANDALL HARRIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 4/16/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/7/98 |

**BEFORE SULLIVAN, P.J., McRAE AND SMITH, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case is an appeal from Johnny Vaughn's murder conviction and sentence to life imprisonment without possibility of parole. Vaughn and Vanessa Givens were indicted by the Hinds County Grand Jury during the January Term, 1995, for the murder of Albert Shields on or about November 27, 1994. Givens pled guilty to the murder charge and was sentenced to life imprisonment. Vaughn pled not guilty and proceeded to trial on April 8, 1996, before Circuit Court Judge James E. Graves, Jr. Based primarily upon the testimony of Givens and five other eyewitnesses, the jury found Vaughn guilty of murder. After the State presented proof of Vaughn's prior convictions at the sentencing hearing, Judge Graves sentenced Vaughn to life imprisonment in the Mississippi Department of Corrections as a habitual offender. On April 18, 1996, Vaughn filed his motion for a new trial or for judgment notwithstanding the verdict, which Judge Graves overruled in an order dated April 19, 1996. Vaughn perfected his appeal to this Court, assigning as error the overwhelming weight of the evidence against the verdict and the replacement of a juror with the alternate. Because we find that there was sufficient evidence to at least convict Vaughn of aiding and abetting in Shields's murder,

and that the trial court did not abuse its discretion in replacing the absconding juror, we affirm Vaughn's conviction and sentence.

## STATEMENT OF THE FACTS

¶2. On the morning of November 27, 1994, Vanessa Givens went to Johnny Vaughn's house and woke him up to take her to Albert Shields's house. Givens testified that she told Vaughn that she needed to "take care of a little business," because Shields had struck Givens's sister, Annie Simmon, and Vaughn's sister, Katie Easterling during a fight at the Gee Gee Club on Woodrow Wilson Avenue in Jackson. Givens stated that Vaughn gave her a gun, took one himself, and told her to "come on." However, Vaughn testified that Givens was drunk and hysterical, and that she took the gun from his house on her own. He maintained that she never told him where they were going or why.

¶3. Vaughn and Givens drove a borrowed truck to Shields's house where they parked behind Leroy Harris, Jr.'s car on Carter Street. Leroy Jr. had driven to Shields's house to drop off his uncle Arthur Mitchell. His father, Leroy Harris, Sr., was in the car with them. Shields, another of Leroy Jr.'s uncles, was standing inside the driver's door talking. Henry Green was talking with his girlfriend, Shields's sister Edna, on the porch. Shields's other sister, Loretha, was watching from the window.

¶4. Vaughn and Givens both exited the truck, and Vaughn approached Shields, while Givens stood between the car and the truck. Testimony from the witnesses established that Vaughn's gun was a 9 mm, and Givens was carrying a .22. Vaughn walked up to Shields and said, "I told you about jumping on my sister." Shields begged him not to shoot, but Givens, Green, Leroy Jr., Leroy Sr., and Loretha all testified that Vaughn fired his gun directly at Shields, who held no weapon. Givens fired her gun a couple of times, but no one was sure whether or not she shot Shields. Vaughn maintained that Givens did all of the shooting, and he never once fired his weapon. After shooting Shields, Vaughn and Givens jumped back in the truck and drove away. When Officer Don Deaton arrived on the scene at 11:38 a.m., Shields was dead.

¶5. The parties stipulated at trial that three .22 shell casings were found at the scene, and a .22 caliber projectile was found in Leroy Jr.'s speedometer dial. John Dial from the Jackson Police Department Crime Lab confirmed that the casings and projectile were .22 caliber and that the three casings were fired from the same gun. Dr. Steven Hayne, who performed the autopsy on Shields, testified that Shields died from a single gunshot wound to the right side of his chest. Dr. Hayne was not able to reach any conclusion as to the caliber of the projectile entering Shields's body. He testified that it was probably larger than a .22, but he could not eliminate the possibility that it was a .22. Dr. Hayne stated that the wounds were consistent with the weapon being to Shields's right when fired.

¶6. Based upon the foregoing evidence, the jury found Vaughn guilty of murder. The State presented evidence of Vaughn's two prior convictions for possession of cocaine with intent to distribute, and Judge Graves sentenced Vaughn to serve a life term as a habitual offender.

## STATEMENT OF THE LAW

### I.

**THE VERDICT OF GUILTY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

**Standard of Review**

¶7. To review the sufficiency of the evidence on appeal this Court applies the following standard of review:

> When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence--not just that supporting the case for the prosecution--in the light most consistent with the verdict. We give prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

*McFee v. State*, 511 So.2d 130, 133-34 (Miss. 1987).

**I.**

¶8. Vaughn argues that there were material inconsistencies and a lack of reliability in the State's witnesses' testimony that make the guilty verdict suspect in his case. He maintains that Givens's testimony supported a finding that she alone murdered Shields, because she stated that she was responsible for his death, and because she pled guilty to the murder, indicating that she killed Shields. Vaughn also points to the fact that the only casings found at the scene were .22 caliber, and the testimony showed that Givens was carrying a .22, while his gun was a 9 mm. He tries to discredit the testimony of Leroy Sr., Leroy Jr., Mitchell, and Green, because they all took cover once the shooting began. His argument is that they couldn't have seen what happened, because Leroy Sr. was on the floorboard, Leroy Jr. was underneath the car, Mitchell had run down the street, and Green was hiding behind the bricks. Vaughn contends that Loretha's and Leroy Sr.'s testimony was not reliable, because they stated that Vaughn shot Shields straight in the chest, contrary to Dr. Hayne's findings. Similarly, Vaughn argues that Leroy Jr.'s account of Shields being shot in the back was not creditable since it was contradicted by Dr. Hayne's testimony. Vaughn asks us to find that a reasonable juror could only believe his own testimony that Givens was solely responsible for Shields's murder, and that Vaughn had no knowledge of Givens's intent to kill Shields.

¶9. Vaughn was convicted of murder under Section 97-3-19(1). That statute reads in pertinent part, "The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases: (a) When done with deliberate design to effect the death of the person killed, or of any human being." Miss. Code Ann. § 97-3-19(1)(a) (Supp. 1997). The jury was properly instructed on the elements of murder in Instruction S1.

¶10. Vaughn's argument fails to recognize one simple important fact--all five eyewitnesses who

claimed to have seen the shooting (Givens, Green, Leroy Jr., Leroy Sr., and Loretha) testified that Vaughn fired his gun directly at Shields. The witnesses also stated that Shields was unarmed, the investigating officers found no weapon on the scene to dispute that fact, and Vaughn offered no proof to suggest that Shields was armed. Vaughn was the only witness to claim that he never fired his weapon. The fact that the other witnesses may have been confused about the angle of Vaughn's gun or the position of the victim as he stood by the car does not diminish that overwhelmingly condemning point. The testimony of five eyewitnesses that Vaughn intentionally shot directly at Shields when Shields was unarmed certainly meets the burden of proof to show beyond a reasonable doubt that Vaughn deliberately killed Shields without authority of law.

¶11. Even if Dr. Hayne was incorrect in concluding that Shields's gunshot wound was probably caused by a bullet larger than .22 caliber, and the jury believed that it was Givens's shots that actually killed Shields, a reasonable juror could still find that Vaughn was guilty as an aider and abetter. "Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not." Miss. Code Ann. § 97-1-3 (1994). "What renders one an accessory before the fact is well settled. In *Crawford v. State*, 133 Miss. 147, 97 So. 534 (1923), this Court ruled that to aid and abet in the commission of a felony, one must 'do something that will incite, encourage, or assist the actual perpetrator in the commission of the crime.'" *Malone v. State*, 486 So.2d 360, 363 (Miss. 1986). "One who is an accessory before the fact or one who aids and abets necessarily enters into an agreement that an unlawful act will be done. He participates in the design of the felony." *Id*. at 364. "It is well settled that in the absence of a conspiracy to commit a homicide, the mere presence of a person is not sufficient even though such person might have approved of the crime." *Griffin v. State*, 293 So.2d 810, 812 (Miss. 1974). The trial court properly instructed the jury on these legal guidelines governing conviction as an aider and abetter in Instructions S-2, D-8, and D-9. Vaughn was not merely present for the murder of Shields. According to the testimony of five eyewitnesses, he was an active participant in Shields's murder. By driving Givens to Shields's house and participating in the shooting, Vaughn satisfied the elements of murder as an aider and abetter, even if his bullet was not the one responsible for Shields's death. We refuse to reverse Vaughn's conviction and sentence based upon this assignment of error.

## II.

## THE LOWER COURT ERRED IN REPLACING A JUROR WITH AN ALTERNATE IN VIOLATION OF MISS. CODE ANN. § 13-5-67.

### Standard of Review

¶12. "[T]he dismissal of a juror for good cause and his replacement with an alternate is within the sound discretion of the trial judge." *Shaw v. State*, 540 So.2d 26, 28 (Miss. 1989). We must therefore apply an abuse of discretion standard of review to this issue.

## II.

¶13. After the jury was selected and informed that they would be serving, but before they were sworn in, Juror No. 3, Michael Wilder, disappeared from the courthouse. A thorough search of the building did not reveal his whereabouts. Upon discovering his absence, Judge Graves asked the attorneys how

they would prefer to proceed. The State suggested that the court reopen jury selection, and the Defense voiced their desire to postpone trial until the next day and have the court inform Mr. Wilder that he would face contempt charges if he failed to show up. Judge Graves decided that it would be best to replace Mr. Wilder with the alternate, Dexter Morgan and proceed with the trial. He reasoned that there was no way to guarantee Mr. Wilder's presence in court the following day other than to arrest him, and that by arresting him, he would be in jail rather than in court. Judge Graves also felt that any way of dealing with Mr. Wilder would leave him in a disposition that would not be desirable for performing jury duty.

¶14. Vaughn now argues that replacing Juror Wilder with Alternate Morgan denied him due process of law. Section 13-5-67 governs the replacement of jurors with alternates. "Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties." Miss. Code Ann. § 13-5-67 (Supp. 1997). Vaughn contends that the record indicates that Wilder was qualified to exercise his duties as a juror, and the trial court should not have replaced him since both sides found him to be an acceptable juror.

¶15. Vaughn failed to make a contemporaneous objection to the replacement at trial, and has therefore waived this assignment of error on appeal. *Myers v. State*, 565 So.2d 554, 557 (Miss. 1990) ("a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter"). However, even if Vaughn's suggestion to postpone trial and locate Wilder could be interpreted as an objection and request for a continuance, the plain fact of the matter is that Wilder became unable to perform jury duty when he disappeared from the courthouse without consent of the court. Judge Graves's decision to replace him with the alternate was therefore not a "radical departure from the statutory scheme" as Vaughn suggests. *Tanner v. State*, 190 So.2d 670, 672 (Miss. 1966) ("A case will not be reversed for irregularities or informalities in summoning and impaneling juries unless there is a radical departure from the statutory scheme"). Furthermore, Vaughn has not shown how replacing Wilder with Morgan prejudiced him in any way. Absent a showing of prejudice, we will not find that the trial court abused its discretion in replacing a juror with an alternate. *Russell v. State*, 220 So.2d 334, 337 (Miss. 1969). This issue is without merit.

## CONCLUSION

¶16. The jury's guilty verdict in this case was supported by the testimony of five eyewitnesses who saw Johnny Vaughn shoot Albert Shields. Vaughn's argument that the verdict was against the overwhelming weight of the evidence is therefore without merit. Since Juror Wilder disappeared before he could be sworn in, Judge Graves did not abuse his discretion by replacing him with Alternate Morgan. Vaughn has failed to raise any issues requiring reversal by this Court, so we affirm the murder conviction and life sentence in this case.

¶17. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT WITHOUT POSSIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED**.

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**