726 So.2d 274 (1998)
Olan Wayne EDWARDS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01562 COA.
Court of Appeals of Mississippi.
December 30, 1998.
*275 Harold J. Barkley, III, Aberdeen, Attorney for Appellant.
Office of the Attorney General by Jolene M. Lowry, Attorney for Appellee.
BEFORE BRIDGES, C.J., PAYNE, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Olan Wayne Edwards was convicted by a Monroe County jury of burglary of his former girlfriend's home and of kidnapping. On appeal he alleges that evidence of the bad character of the victim was improperly excluded since it helped prove his intent. He also challenges the weight and sufficiency of the evidence. Finding no merit to these arguments, we affirm.

FACTS
¶ 2. Olan Wayne Edwards and Dana Malone dated from June 1993 until February of 1995. They had one daughter who resided with her mother but with whom Edwards was allowed visitation. On October 25, 1996, he arrived at Malone's home to pick up his daughter for a visit. He and his daughter then stopped at a friend's home where Edwards met Chuck Coleman, the estranged husband of Dana Malone's roommate. Coleman told Edwards that other men were living in Malone's home. After taking a gun, the two went to Malone's home where Edwards could discuss his daughter with Malone. Coleman went with Edwards in hopes of visiting his wife. No one was home, so the two left. They then visited a nightclub and, at some time around midnight, drove back to Malone's home.
¶ 3. While Coleman remained in the car, Edwards broke down the door of Malone's house. He then attacked her date, Johnny Motes, striking him with a knife as well as with his fists. During the struggle, Malone fled to a neighbor's to call the police. Motes attempted to escape but was met by Coleman, who was wielding a gun. Two friends of Motes then drove up. Motes attempted to get into their vehicle and escape. However, Edwards and Coleman pulled him from the vehicle and shoved him into their car, demanding that he lead them to Coleman's wife.
¶ 4. Edwards drove the other two men. Motes said that he saw Coleman's wife in a truck that had just passed them going the *276 other way. Edwards then turned the car around and followed the truck, which had by then pulled into a neighbor's driveway. While Edwards and Coleman approached the truck, demanding to know where Coleman's wife was, Motes fled into the woods.
¶ 5. At some stage police arrived in response to Malone's telephone call. They escorted her back to her home. Inside, they found Edwards, who had ransacked the home, breaking furniture and dumping trash. Following his arrest, he continued to threaten both Malone and Motes.
¶ 6. Edwards was ultimately convicted of burglary and kidnapping.

DISCUSSION

I. Sufficiency of the evidence
¶ 7. When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidencenot just that supporting the case for the prosecutionin the light most consistent with the verdict. We give the prosecution the benefit of all inferences that may reasonably be drawn from the evidence. Only if the evidence so considered points in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty is reversal and discharge required. Vaughn v. State, 712 So.2d 721, 723 (Miss.1998).
¶ 8. Edwards argues that he did not have the intent to assault Malone when he entered her home. The supreme court has discussed the difficult task of determining an individual's intent, explaining that "[i]ntent to do an act or commit a crime is also a question of fact to be gleaned by the jury from the facts shown in each case. The intent to commit a crime or to do an act by a free agent can be determined only by the act itself, surrounding circumstances, and expressions made by the actor with reference to his intent...." Duplantis v. State, 708 So.2d 1327, 1341 (Miss.1998) (quoting Shanklin v. State, 290 So.2d 625 (Miss.1974)). Unless one expresses his intent, the only method by which intent may be proven is by showing the acts of the person involved at the time in question, and by showing the circumstances surrounding the incident. Id. at 1342. Both Dana Malone and Johnny Motes testified that Edwards broke down the door and immediately attacked Motes. We find that this was sufficient evidence from which the jury could infer that Edwards intended to commit an assault inside the home.
¶ 9. Edwards also states that evidence does not prove his guilt of kidnapping. He claims that the testimony indicated that it was Coleman who had the gun and caused the kidnapping.
¶ 10. Although Edwards did not have the gun, testimony indicates that he did actively participate in forcing Motes into the vehicle. "Any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an `aider and abettor' and is equally guilty with the principal offender." Hooker v. State, 716 So.2d 1104, 1110 (Miss.1998). Consequently, the State proved that Edwards was guilty of the crime of kidnapping, regardless of whether he actually possessed the gun.

II. Weight and credibility of the evidence
¶ 11. In determining whether a jury verdict is against the overwhelming weight of the evidence we "must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Collier v. State, 711 So.2d 458, 461 (Miss.1998)(quoting Herring v. State, 691 So.2d 948, 957 (Miss.1997)). We will reverse "[o]nly in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice...." Id.
¶ 12. Issues such as whether Edwards intended to discuss his child with Malone or whether he intended to commit an assault were matters properly left to the jury in their review of all the evidence. The same can be said as to his participation in the kidnapping of Motes. The jury heard testimony *277 tending to show that Edwards forced Motes into the vehicle and Edwards's denial. The jury chose to disbelieve Edwards and to believe the witnesses for the State. Their verdict is not contrary to the overwhelming weight of the evidence.

III. Character evidence
¶ 13. Edwards claims that the trial judge erred in refusing to allow him to present evidence of the bad character of his former girlfriend, Dana Malone. At trial, his defense was that he entered Malone's home only to complain about the conditions in which his daughter was living. He claims that Malone drank and used drugs in his daughter's presence. He further asserts she was also sexually promiscuous. By not allowing him to present this evidence, he claims that his defense was greatly prejudiced.
¶ 14. A hearing was held on the State's motion in limine to exclude any mention of Malone's bad character. The trial judge found that the evidence was irrelevant, as it provided no justification for Edwards's behavior. However, he did rule that Edwards was permitted to explain his reasons for going to Malone's home that night but instructed him not to get into any specific incidents. After the close of the State's evidence, Edwards proffered the testimony of Malone's roommate who stated that Malone did drink and smoke marijuana while her daughter was in the home, but only when the daughter was asleep. The trial judge again ruled that the evidence was inadmissible.
¶ 15. Edwards testified that his intent on the night of the crime was to talk to Malone about his daughter's living conditions. He was allowed to state that earlier that day when he arrived to pick up his daughter, he saw beer bottles, whiskey bottles, and marijuana cigarette butts in the home. Additional relevant testimony included Malone's admission on cross-examination that she had used drugs in the past. Moreover, Motes was questioned as to whether Edwards informed him on the night of the break-in that he objected to Motes's having sex and drinking beer in the same home in which his daughter was being raised. The jury became aware of the conditions to which Edwards asserted his daughter was exposed.
¶ 16. Edwards nonetheless seeks reversal due to the limits placed on his evidentiary presentation. He points to the evidentiary rule that allows the accused to introduce character evidence of the victim in limited circumstances. M.R.E. 404(a)(2). The comment to the rule provides that "[o]rdinarily a victim's character is irrelevant.... Under specific circumstances, however, the character of a victim may be relevant. The typical context for the argument is instances where the defendant claims that the victim was the initial aggressor and that the defendant's actions were in the nature of self-defense...." M.R.E. 404(a)(2), cmt. We find that a defendant's argument that he was concerned about his daughter's welfare because of the recently discovered trait of dangerousness of the child's custodian is a possible additional situation for this kind of evidence. The rule specifically authorizes inquiry by a criminal defendant into "a pertinent trait of character of the victim of the crime," which is a broad principle. M.R.E. 404(a)(2).
¶ 17. However, the evidence does not support his theory. His appellate brief states that the evidence supports that he "grew angry about the atmosphere of drugs, sex and alcohol" in which his daughter was being raised. He had apparently long realized the mother's drug use. He himself was a "beneficiary" of her sexual life style. His evidence showed he did not much appreciate successors to that role, but there is no correlation between that self-centered rage and a concern for the welfare of another person, in this case a child. In other words, nothing that he wished to prove supported that he was on a rescue mission for the protection of his daughter. That might have been relevant to justify or at least mitigate a burglary. However, he knew that his daughter was not even at the home, as Edwards himself left her with someone else before going to see Malone.
¶ 18. There are an infinite number of legitimate reasons for one person to visit another. Edwards's visit to Malone's home did not remain suspicious unless he can prove that *278 Malone was dissolute. Edwards himself testified that he went to Malone's home because of the drug use. The other defendant, Coleman, also testified as to this explanation. The court did not need to permit additional evidence of the victim's bad character. Malone could have been made into a less sympathetic victim perhaps, but that would not have added to the relevant considerations for the jury.
¶ 19. Mississippi Rule of Evidence 404(b) is inapplicable as well. The rule provides "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent...." According to Edwards, evidence of Malone's "wrongs or bad acts" is admissible to prove his intent in breaking into her home. In other words, Edwards is attempting to use prior bad acts of Malone in an attempt to demonstrate his own intent. The rule allows prior bad acts of a person to be introduced to prove that person's intent. It does not permit the defendant to introduce prior bad acts of the victim in order to prove his own intent in committing the crime.
¶ 20. A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses his discretion so as to be prejudicial to the accused, the Court will not reverse this ruling. Stevens v. State, 717 So.2d 311, 313 (Miss. 1998). Edwards has failed to demonstrate that such an abuse occurred in the present case.
¶ 21. THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I OF BURGLARY AND COUNT II OF KIDNAPPING AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ON COUNT I AND TWENTY-FIVE YEARS ON COUNT II TO RUN CONSECUTIVELY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED AGAINST MONROE COUNTY.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND PAYNE, JJ., CONCUR.