738 So.2d 1248 (1999)
Frederick STEVENSON a/k/a Fred Stevenson, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01197-COA.
Court of Appeals of Mississippi.
April 20, 1999.
*1249 Helen B. Kelly, Adam A. Pittman, Batesville, Attorneys for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
BEFORE McMILLIN, C.J., KING, P.J., AND DIAZ, J.
McMILLIN, C.J., for the Court:
¶ 1. Frederick Stevenson was convicted of three counts of aggravated assault. He has appealed that conviction claiming that either (a) the trial court erred in denying his JNOV motion based on the insufficiency of the evidence of his guilt, or (b) that the court erred in refusing to order a new trial because the jury's guilty verdict was against the weight of the evidence. We disagree and affirm Stevenson's conviction.

I.

Facts
¶ 2. On June 7, 1996, three guests at a party outside a home in Jonestown were injured by buckshot pellets fired from a shotgun. Evidence presented by the State indicated that Stevenson, together with a companion named Patrick McAdory and other unnamed individuals, had arrived at *1250 the location of the party in a vehicle and that McAdory and Stevenson had exited the car. One witness for the State, Joseph Ewing, indicated that McAdory held the shotgun that caused the injuries while Stevenson held a pistol. That witness claimed to have seen McAdory fire the shotgun toward the gathering but said he did not see Stevenson fire the pistol. Another witness, Kashius Lewis, testified that he saw Stevenson a short time before the shooting incident and observed that he was wearing a red shirt. After the shooting started, this witness said he was hiding behind a car but managed to look through the windows of the car and saw an individual wearing a red Chicago Bulls shirt that he recognized to be Stevenson firing a shotgun in the direction of the partygoers. Investigating officers reported that three different individuals were struck and wounded by the shotgun blasts. They recovered two spent shotgun shells from the scene which were introduced into evidence.
¶ 3. Stevenson testified in his own defense and claimed that he was at his aunt's home nearby when the shooting began and that he ran inside upon hearing the gunshots. After the shooting ended, Stevenson went to McAdory's wife's house to "see what was going on." He said that he was wearing a black shirt that evening. Stevenson's aunt, cousin and girlfriend all testified to corroborate his version of events and his mode of dress.
¶ 4. The jurors were instructed that they could convict Stevenson of aggravated assault if they concluded that Stevenson was the person who actually fired the shotgun or if they believed that McAdory had fired the shotgun but that Stevenson had aided and abetted him in committing the assaults. The jury convicted Stevenson on all three counts.

II.

The First Issue: The proof was insufficient to sustain Stevenson's conviction
¶ 5. Stevenson filed a motion for a JNOV after the jury found him guilty. The trial court denied the motion. On appeal, Stevenson argues that the motion should have been granted since the State's evidence, contradictory on its face, was insufficient to support a jury finding that he actually fired the shotgun blasts that caused the injury of the three persons at the party, and further, there was no proof that he aided, abetted, or encouraged McAdory to shoot in the direction of the victims.
¶ 6. A JNOV motion tests the sufficiency of the State's evidence. It is, in effect, an assertion that the State's proof, even viewed in the light most favorable to the State, was so lacking as to one or more of the essential elements of the crime that no reasonable juror properly applying the law to the facts could find the defendant guilty. McClain v. State, 625 So.2d 774, 778 (Miss.1993).

A.

Sufficiency of the Evidence that Stevenson Shot the Shotgun
¶ 7. Stevenson's specific argument attacking the sufficiency of the evidence that he was the actual assailant is based on the fact that one of the State's eyewitnesses reported that Stevenson was armed with a pistol and not the injury-producing shotgun. He argues additionally that the other witness's testimony was inconclusive to link Stevenson to the shotgun since that witness admitted that he did not see the face of the individual in the red shirt who fired the gun.
¶ 8. While it certainly may be true that the State would prefer to present a unified version of events at a trial with each witness supporting and corroborating the other, it is not fatal to the State's case if this does not occur. Especially in situations such as this, where there is a sudden and unexpected eruption of life-threatening violence, it is not unexpected that different witnesses to the same events may relate varying versions of the facts. The jury, sitting as fact-finder in a criminal case, is charged with the duty to hear the evidence, judge the credibility of the witnesses *1251 based on such considerations as their demeanor and their ability to withstand a vigorous cross-examination, and then determine what evidence has such worth and believability that the jury is prepared to conclude it is true. Bridges v. State, 716 So.2d 614(¶ 15) (Miss.1998).
¶ 9. We believe that, on this record, it would have been entirely plausible for the jury to believe that Lewis's version of events was the more probable one and that Ewing's somewhat contrary perception of events, which placed the shotgun in McAdory's hands, was distorted by the stress and excitement of the occurrence. Assuming that Lewis was a credible witness during direct examination, as we must for purposes of this analysis, we do not find that he was substantially impeached during cross-examination nor was any evidence presented that tended to make his version of events unlikely or implausible.
¶ 10. The mere fact that Lewis admitted that he did not actually see Stevenson's face in the brief moments when he observed an individual firing the shotgun does not mean that there was not sufficient evidence for the jury to conclude beyond a reasonable doubt that it was Stevenson. The evidence showed that Lewis had observed a person he positively identified as Stevenson in the same area that the shots were fired only moments before the shooting began and that, though he did not actually see the shooter's face, he did observe the shooter, saw the similarity in dress, and concluded at the time that it was Stevenson. We are of the opinion that this evidence was sufficient to support a reasonable inference by the jury that Stevenson was, indeed, the person firing multiple shotgun blasts into the assembled body of persons at the party.

III.

The Second Issue: There was insufficient evidence to support a finding that Stevenson aided and abetted McAdory
¶ 11. The State's alternate theory of criminal culpability on Stevenson's part was based on the proposition that, if the jury concluded that Ewing's version of events was the more credible, it could still convict Stevenson on the theory that he aided and abetted McAdory in the shooting. Mississippi law is quite clear that one who aids and abets another in a criminal enterprise may be convicted and punished as a principal. Jones v. State, 710 So.2d 870, 874 (Miss.1998); Swinford v. State, 653 So.2d 912, 915 (Miss.1995).
¶ 12. Stevenson points to authority for the proposition that one who merely is in the same location as a criminal perpetrator and who does nothing to encourage or assist in the commission of the crime cannot, by his mere passive presence, be convicted as an aider and abetter. See, e.g., Clemons v. State, 482 So.2d 1102 (Miss. 1985).
¶ 13. Assuming that the jury did find, as a matter of fact, that Ewing was a credible witness and that McAdory was the individual who fired the shotgun blast, we are satisfied that the evidence could reasonably be interpreted as showing Stevenson's active involvement in the shooting incident. Ewing testified to seeing McAdory and Stevenson arrive at the party in the same vehicle. He said that both of them departed the vehicle at about the same time and that both of them were armed with deadly firearms. There is no legitimate dispute that a shotgun was discharged and that the shotgun blast injured three persons. From those facts, the jury could have concluded that McAdory fired the injury-causing blasts and that he did so as a part of a scheme or plan in which Stevenson was an active participant. Stevenson's apparent willingness to accompany an armed McAdory to the scene of the party while he (Stevenson) was also armed and to stand side by side with McAdory as McAdory fired multiple shotgun blasts into the crowd is, in the view of this Court, sufficient evidence to support an inference that these two were acting in concert and that Stevenson, by his actions, provided encouragement to McAdory to act as he did.
¶ 14. Though there was some conflict in the State's evidence concerning exactly *1252 how the injuries to these three victims were inflicted, this is not one of those instances where two equally plausible scenarios are presented, one consistent with guilt and one consistent with innocence. In this case, the larger story told to the jury by both eyewitnesses was not in conflict. Both versions put Stevenson and his companion, McAdory, squarely at the center of a shooting incident that caused injury to three persons and could easily have resulted in more serious injuries or even death. We are not prepared to say that Stevenson may escape any punishment for his actions simply because, in the excitement and confusion that would naturally flow from such an event, one of the eyewitnesses may have been confused as to whether Stevenson or his companion McAdory actually fired the shotgun.
¶ 15. In the recent case of Vaughn v. State, the Mississippi Supreme Court dealt with a case where Vaughn and a companion were both armed and involved in a shooting that resulted in the death of another individual. Vaughn v. State, 712 So.2d 721, 722 (Miss.1998). Vaughn was convicted of murder and argued on appeal that the verdict was against the weight of the evidence because the evidence pointed toward a conclusion that his companion fired the fatal shots. Id. at 723. The supreme court affirmed his conviction saying that there was substantial evidence from which the jury could conclude that Vaughn fired the fatal blast, but that, in all events, even if "the jury believed that it was [his companion's] shots that killed Shields, a reasonable juror could still find that Vaughn was guilty as an aider and abetter." Id. at 724.
¶ 16. The facts of this case are, in our view, sufficiently similar to the Vaughn case to conclude that Stevenson's conviction, like Vaughn's, ought to be sustained.

IV.

The Third Issue
¶ 17. Alternatively, Stevenson argues that he should have been entitled to a new trial because the verdict, when analyzed under either of the alternate theories of guilt, was against the weight of the evidence. If the trial court denies a new trial motion based on the assertion that the verdict was against the weight of the evidence, we must review the evidence in the light most favorable to sustaining the verdict and may reverse the trial court only if we conclude that a manifest injustice has occurred. Fox v. State, 724 So.2d 968 (¶ 16) (Miss.Ct.App.1998).
¶ 18. Balanced against the State's evidence, which we have already summarized, was Stevenson's own testimony that he was in his aunt's home near the party when the shooting occurred. His aunt, cousin, and his girlfriend corroborated his version of events, and all three claimed to remember that Stevenson was not dressed in a red shirt on that particular evening, but was, instead, wearing a black shirt.
¶ 19. This conflicting evidence was submitted to the jury for resolution. The jury, by its verdict, announced that it found the State's witnesses more credible than Stevenson and his three witnesses who, on the face of it, were subject to claims of bias by virtue of their family and emotional ties to the defendant. We find nothing in the record that would suggest that the jury disregarded or failed to give due consideration to substantial credible evidence consistent with Stevenson's innocence in arriving at its verdict. There is, therefore, no reasoned basis for this Court to disturb the verdict of this jury and order a new trial.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF THREE COUNTS OF AGGRAVATED ASSAULT AND SENTENCE OF TWELVE YEARS ON EACH COUNT WITH SEVEN YEARS TO SERVE AND FIVE YEARS SUSPENDED WITH THE SENTENCE IN COUNT ONE TO RUN CONSECUTIVE TO ANY SENTENCE PREVIOUSLY IMPOSED AND THE SENTENCES IN *1253 COUNTS TWO AND THREE TO RUN CONCURRENTLY WITH THE SENTENCE IN COUNT ONE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND MAKE FULL RESTITUTION TO EACH VICTIM IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.