# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-01834-SCT

*A. D. MILLS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/20/2000 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAN W. DUGGAN, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | RICHARD D. MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/21/2002 |
| MOTION FOR REHEARING FILED: | 3/8/2002; denied 4/18/2002 |
| MANDATE ISSUED: | 4/25/2002 |

**BEFORE SMITH, P.J., COBB AND DIAZ, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. On October 18, 2000, A. D. Mills was convicted of capital murder in the Circuit Court of Madison County, Circuit Judge Samac S. Richardson, presiding. Mills was sentenced to a term of life imprisonment in the custody of the Mississippi Department of Corrections. Aggrieved by the conviction and sentence, Mills now raises the following issues on appeal before this Court:

**I. Did the trial court err in not granting Mills's peremptory challenge to juror Flowers?**

**II. Did the trial court err in dismissing juror Catherine Henry?**

**III. Did the trial court commit reversible error in permitting Veronica Otto to testify?**

**IV. Did the trial court commit reversible error in not granting a mistrial when Veronica testified about a prior bad act committed by Mills?**

## FACTS

¶2. On July 27, 1998, Mills and Patrick Otto decided to rob William McClain, an insurance man who was collecting premiums at the Canal Street Apartments in Canton. Mills and Patrick hid under a staircase with masks covering their faces. After McClain descended the stairs, Mills shot him in the leg after McClain refused to surrender his brief case. McClain died three days after the shooting as a result of a blood clot caused by the shooting.

¶3. Mills and Patrick were seen with a gun before the robbery and after the robbery. Among other evidence in the record that indicates Mills's guilt, Paulette Howard and Veronica Otto, Patrick's sister, both testified that Mills said he was the one who shot McClain because McClain was "hollering like a woman" "and he wouldn't let the damn brief case go."

## ANALYSIS

### I. DID THE TRIAL COURT ERR IN NOT GRANTING MILLS'S PEREMPTORY CHALLENGE TO JUROR FLOWERS?

¶4. This Court accords great deference to the trial court in determining whether the explanations offered for exercising peremptory strikes are truly race neutral reasons. *Spann v. State*, 771 So.2d 883, 904 (Miss. 2000). Under *Batson*, a trial court's determinations are afforded great deference because they are largely based on credibility. *Puckett v. State*, 788 So.2d 752, 756 (Miss. 2001); *Johnson v. State*, 529 So.2d 577, 583 (Miss. 1998). Furthermore, this Court will not reverse factual findings relating to a *Batson* challenge unless they are clearly erroneous. *Id.*

¶5. After Mills used his first three peremptory challenges against white jurors, the prosecution raised a *Batson* objection requiring the defense to give racially neutral reasons for its challenges of white jurors. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986). Once facially neutral explanations are articulated by the proponent, the trial court must determine whether the explanations are pretextual. *Puckett*, 788 So.2d at 762. Mills's race neutral reason for striking Flowers was that Flowers had a friend who worked for the Madison County Sheriff's Department. The trial court did not accept Mills's reason for striking Flowers because the Madison County Sheriff's Department was not involved in Mills's case. Furthermore, Flowers stated that he could be a fair and impartial juror. This Court has held that "the demeanor of the attorney using the strike is often the best evidence on the issue of race-neutrality." *Id.* (citing *Stewart v. State*, 662 So.2d 552, 559 (Miss. 1995)). *See also Henley v. State*, 729 So.2d 232, 240 (Miss. 1998).

¶6. Mills argues that asking jury members whether they are related to or are friends with law enforcement officers is a standard question. He argues that this is a legitimate race neutral reason for Mills who, under the possibility of a conviction for capital murder, would not want a person sitting on his jury who was a friend of a law enforcement officer.

¶7. The trial court had the opportunity to judge the demeanor and sincerity of Mills's attorney when Mills presented his explanation for striking the juror. The trial judge recognized that Flowers was merely a friend of an officer who worked for the Madison County Sheriff's Department, a branch of law enforcement that had no involvement in Mills's case. Flowers stated that he would be fair and impartial despite that friendship. Given the great deference accorded to trial judges in determining the credibility of race-neutral explanations, this Court will not disturb the trial judge's decision to refuse Mills's peremptory challenge.

### II. DID THE TRIAL COURT ERR IN DISMISSING JUROR CATHERINE HENRY?

¶8. The trial court has sound discretion to remove jurors from the jury. *King v. State*, 784 So.2d 884, 887; *Vaughn v. State*, 712 So.2d 721, 724 (Miss. 1998); *Shaw v. State*, 540 So.2d 26, 28 (Miss. 1989). The removal of a juror will not be disturbed unless there is an abuse of discretion. *Vaughn*, 712 So.2d at 724. Furthermore, the defendant must show actual prejudice resulting from the dismissal and

substitution of the juror. *Id*. at 725.

¶9. On the morning of the second day of trial, the judge was informed by his deputy circuit clerk that one of the jurors, Catherine Henry, was seen conversing with members of Mills's family out in the lobby. Henry disregarded specific instructions given by the trial judge to not converse with anyone. Henry was called to the stand, and she admitted conversing with some people in the lobby. She stated that those people merely asked her if she was on the jury, and she responded affirmatively. The deputy clerk was also called to the stand. She stated that she was unable to state the nature of the conversation, but she did confirm that Henry conversed with people sitting in the lobby, believed to be Mills's family members.

¶10. Mills argues that since there was no evidence that Henry could contaminate the jury, she should not have been dismissed. However, out of prudence and precaution, the trial judge used his discretion in dismissing Henry from the jury. This Court finds no error in the judge's decision to dismiss Henry. Furthermore, Mills failed to show any prejudice as a result of Henry's dismissal. This issue is without merit.

### III. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN PERMITTING VERONICA OTTO TO TESTIFY IN REBUTTAL?

¶11. The determination of whether evidence is properly admitted as rebuttal evidence is within the sound discretion of the trial court. *Wakefield v. Puckett,* 584 So.2d 1266, 1268 (Miss. 1991); *Armstrong v. State,* 771 So.2d 988, 999 (Miss. Ct. App. 2000). Therefore, this Court will not disturb the trial court's decision to allow Veronica to testify in rebuttal, unless there was an abuse of discretion.

¶12. On the third day of trial during the cross-examination of Mills, Veronica Otto approached one of the prosecutors and told him that Mills had confessed to her that he shot McClain. Mills denied having any conversation with Veronica about the shooting of McClain. The prosecutor asked that the jury be excused and informed the trial court and the defense of the new development. The trial court granted a recess during which Mills was allowed to interview Veronica. The prosecution announced, outside the presence of the jury, that they would call Veronica as a rebuttal witness. Mills objected stating that "it is kind of late to prepare for a witness." The prosecution noted that her testimony would be for impeachment purposes only and that Mills had failed to indicate what further investigation was needed. Veronica was allowed to testify.

¶13. Mills argues that because Veronica sat through a portion of the trial, including the testimony of Dr. Hayne and Mills, she should not have been allowed to take the stand. Furthermore, Mills argues that since Veronica is a sister of Patrick, Mills's accomplice, she had the opportunity to learn about the testimony of all the witnesses from her family members who sat through the entire trial. Mills also contends that he was not substantially prepared to meet the new evidence with surrebuttal, as required by *Smith v. State*, 646 So. 2d 538 (Miss. 1994).

¶14. In *Box v. State*, 437 So. 2d 19 (Miss. 1983), this Court reversed and remanded a conviction of armed robbery where the identity of a key witness was not revealed until the evening before the trial. In that case the State had constructive knowledge of the witnesses identity 9 months before trial but failed to produce that knowledge to the defense counsel. This Court stated that the accused has an interest in knowing reasonably well in advance of trial what the prosecution will try to prove and how it will attempt to make its proof. *Id.* at 21. *Box* set forth suggested guidelines for trial courts to follow when dealing with a newly discovered witness. First, the defendant, after making a timely objection, should be given a reasonable opportunity to interview the newly discovered witness. Second, if the defendant believes that he

has been subjected to unfair surprise and that his defense will be prejudiced, the defendant should request a continuance. Third, should the State elect to use the witness, the trial judge has considerable discretion in deciding whether to grant a continuance or new trial.

¶15. Unlike *Box*, this is not a case where the prosecution had knowledge that Veronica was a witness before trial began. The trial judge properly determined that there was no discovery violation. The prosecution did not withhold the new evidence and informed Mills and the trial court as soon as the new evidence was discovered. However, the *Box* guidelines are still appropriately considered when a trial court is presented with new evidence at trial. In this case, the trial judge protected the interest of the defense with regard to the new evidence. The trial judge allowed Mills to interview Veronica. Mills conducted a 15 minute interview with Veronica before the cross-examination. Furthermore, Mills was unrestricted in his cross- examination of Veronica. He had the opportunity to explore the reasons why Veronica was late in coming forward with her knowledge of the crime. He also had the opportunity to inquire if she had discussed with her family any testimony from previous witnesses. As evidenced by the record, Mills did ask questions related to Veronica's tardiness. Nothing in the record suggests that Mills would have needed more time to develop his defense because of the new testimony and nothing suggests that he was prejudiced because of the new evidence. Further, Mills did not request a continuance. He stated that a continuance would be unfeasible as late as the third day of trial.

¶16. The trial judge also determined that because Veronica's statement was similar to the statement given by Howard - Mills basically confessed to Howard at a Texaco station that he killed McClain - and because Mills denied making those confessions to Howard, the testimony was proper for rebuttal. Her testimony on direct was used to impeach Mills's testimony that he had no discussions with Veronica regarding the murder of McClain. For these reasons, this issue is also without merit.

### IV. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN NOT GRANTING A MISTRIAL WHEN VERONICA TESTIFIED ABOUT A PRIOR BAD ACT COMMITTED BY MILLS?

¶17. On Mills's cross-examination of Veronica, Veronica was asked if she went to the police to tell them her version of the story in regards to the crime committed by Mills. She responded that she did not tell the police because she had a reason. Veronica was not given an opportunity to tell that reason during her cross-examination. On re-direct, the State asked Veronica why she did not go to the police, and she responded:

A. Well, I was scared because - - okay. Prior to - - before that happened, it was another robbery at the house. The girl that used to stay next-door to me, okay A. D. put a gun to my head, and these were her exact words- -

Mills objected to the testimony, and the trial court sustained the objection. Mills then moved for a mistrial. The trial judge denied the motion for mistrial, but he did instruct the jury that they were to disregard any testimony that Veronica had given as to what someone else said. After re-direct resumed, the State asked:

Q. Ms. Otto, you were scared of A. D. Mills, correct?

A. Yes

Q. And were there any actions or anything that A.D. Mills had done to you that caused you to be scared of him?

A. Yes

Q. What did he do to you? Not what someone else said, but what did he do to you that caused you to be scared of him?

A. He put a gun to my head.

¶18. This Court has held that when a defense attorney inquires into a subject on cross-examination of the State's witness, the prosecutor on rebuttal is entitled to ask the witness to elaborate on the issue. *Hart v. State*, 639 So.2d 1313, 1317 (Miss. 1994). As for the comment regarding the robbery, the State argues that Mills did not move for a mistrial based upon that comment. The State argues that Mills only requested a mistrial "if she said it based on what somebody else said, the jury has already heard that ...."

¶19. Mills relies on the rule of evidence that prior offenses committed by a defendant which did not result in a conviction are generally not admissible either for impeachment or as a part of the State's case in chief. *Tanner v. State*, 764 So. 2d 385 (Miss. 2000). Mills did not ask the trial court to admonish the jury to disregard the improper comment regarding the robbery. *See Weatherspoon v. State*, 732 So.2d 158, 164 (Miss. 1999). This Court finds that the trial court's sustaining of Mills's objection and instructing the jury to disregard her testimony about statements made by others effectively cured the improper comments by Veronica.

## CONCLUSION

¶20. This Court finds no reversible error in the record. Therefore, this Court affirms the trial court's judgment.

¶21. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTION, AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., AND COBB, J., CONCUR IN RESULT ONLY.**