# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01633-COA

CHRISTOPHER GRACE A/K/A CHRISTOPHER LASHAWN GRACE A/K/A CHRISTOPHER LASHAUN GRACE A/K/A CHRIS GRACE A/K/A CHRIS LASHAWN GRACE

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/2017 |
| TRIAL JUDGE: | HON. LARRY E. ROBERTS |
| COURT FROM WHICH APPEALED: | KEMPER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE H. SPINKS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 04/30/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND C. WILSON, JJ.**

**C. WILSON, J., FOR THE COURT:**

¶1. A Kemper County Circuit Court jury convicted Christopher Grace (Christopher) of two counts of armed robbery and one count of felony fleeing or eluding a law enforcement officer in a motor vehicle. As a result of his conviction, Christopher filed a motion for a judgment notwithstanding the verdict (JNOV) and a motion for a new trial. The circuit court denied the motions. Christopher appeals, asserting that there is insufficient evidence to sustain his convictions and that the jury's verdict is contrary to the overwhelming weight of the evidence. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On August 14, 2015, around 11:30 a.m., Christopher and his uncle, LaBrandon Grace (LaBrandon), drove in LaBrandon's green Lincoln Town Car to the Citizens Bank of Philadelphia in Scooba, Mississippi. They drove around the bank several times waiting for bank customers to leave. The Graces eventually parked toward the back of the bank's parking lot. LaBrandon subsequently left the vehicle and entered the bank wearing a mask over his face and carrying a .40 caliber pistol. Once inside the bank, LaBrandon brandished the pistol and demanded money from the bank tellers. The first teller, Tracy Jones, handed LaBrandon $2,931. The second teller, Peggy Fairchild, handed LaBrandon $3,258. LaBrandon pointed the pistol at a third teller, Ken Aust, but did not ask him for money. LaBrandon ran out of the bank and jumped into the passenger side of the green Lincoln Town Car. Christopher, who was driving, sped off.

¶3.     Debra Jenkins, a bank customer, entered and exited the bank prior to the robbery. As she entered the bank, Jenkins saw a green-colored Lincoln Town Car parked in the parking lot with two male passengers in the vehicle. When she exited the bank, Jenkins saw the same vehicle still parked in the parking lot. When Jenkins heard about the robbery, she went back to the bank and provided a description of the vehicle to a law enforcement officer on the scene. Jenkins also provided the officer information about the whereabouts of the vehicle.

¶4.     The vehicle was subsequently located on Highway 16. Kemper County law enforcement officers were dispatched and proceeded to the location. Deputy Allen Griffin identified the vehicle and initiated a traffic stop by turning on his emergency blue lights and

siren. Despite the officer's signal, Christopher did not stop the vehicle but sped up instead. Christopher attempted to pass an 18-wheeler truck via the right shoulder but lost control and wrecked the vehicle. The vehicle slid down an embankment and into some bushes.

¶5.    Christopher and LaBrandon exited the vehicle and began to run. Deputy Griffin yelled, "Police. Halt. Stop." Both men continued to run. Deputy Griffin then fired one shot into the air. At that point, Christopher and LaBrandon "hit the ground." They were both apprehended and taken into custody. Law enforcement officers later returned to the scene where they located both the pistol and the stolen money.

¶6.    That night, after being *Mirandized*,[1] Christopher gave the following statement to law enforcement:

> I know that LaBrandon has been planning to rob a bank for several weeks now. He called me this morning and said "Bro, are you ready?" I told him yeah[.] He came and picked me up about 10:00 or maybe a little after. I got in his green Lincoln town [car] and we rode to Kemper County and went to Scooba. LaBrandon was driving the car. When we got there, we rode around the block several times around the bank. He was scoping it out and waiting for the customers to leave. Finally, he pulled into the parking lot and parked on the back side. We sat in the car for about 10 or 15 minutes waiting for all the other cars to leave. Once everyone was gone LaBrandon jumped out of the car and ran into the bank. He had on a pair of black pants, black shirt, black stocking cap mask over his face and a blue button up shirt over his head. He was carrying a .40 caliber Hi Point handgun that he loaded with bullets while we were sitting in the parking lot. When he ran into the bank, I got under the wheel and pulled out and went to the corner of the street. He wasn't in the bank no longer th[a]n 20 seconds or so. By the time I got to the corner, he was coming out of the bank and running across the field towards me. I saw him fall down. He got up and ran to the car. He jumped in on the passenger side and we took off. He told me to take a left on one of the city streets. We drove thr[ough] town and hit a back street which led to a dirt road. I have never been to Scooba before so [La]Brandon was having to tell me where to go. As I

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

drove down the dirt road, [La]Brandon was taking his clothes off and changing into another set. He thr[ew] his robbery clothes out the window as he took them off. I continued driving and made a left onto another road. [T]hat road led back to Hwy 16. I took a left on that road and we were headed back towards Scooba. As we were going up that highway we met a black [s]heriff's SUV. He was running blue lights. His windows were tinted and I could not see inside, but we were watching him in the rear view mirrors. He turned around and started back towards us. [La]Brandon said, "Bro, don't stop![]" I gassed on the car and tried to get away. I ran up behind an 18 wheeler and couldn't get around him because of oncoming traffic. I hit the shoulder and passed him on the right side. That's when the front of the big truck hit the back of the car and I lost control. I went off on the left side of the road and wrecked out. [T]he [o]fficer jumped out of his vehicle and came after us. I bailed out of the car and tried to run. He told us to stop, but I didn't. I kept trying to run and then he fired his gun at me. I hit the ground and gave up.

¶7. In April 2016, Christopher was indicted by a grand jury for two counts of conspiracy to commit armed robbery, two counts of armed robbery, one count of possession of firearm by a felon, and one count of felony fleeing or eluding a law enforcement officer in a motor vehicle. The State later dropped both conspiracy counts and the possession of firearm by a felon count. The case proceeded to jury trial in October 2017.

¶8. A Kemper County Circuit Court jury convicted Christopher of two counts of armed robbery and one count of felony fleeing or eluding a law enforcement officer in a motor vehicle. Christopher was sentenced to life in the custody of the Mississippi Department of Corrections for each armed robbery conviction, to run concurrently with each other, and five years for the felony eluding conviction, to run consecutively to the concurrent life sentences. Christopher subsequently filed separate motions for a JNOV and a new trial. The circuit court denied both motions. Christopher appeals and contends: (1) there is insufficient evidence to support his convictions, and (2) the verdict is against the overwhelming weight of the evidence.

4

ANALYSIS

*I.      Sufficiency of the Evidence*

¶9.     Christopher first contends that the circuit court erred in denying his motion for a JNOV because the evidence is insufficient to support his convictions. In considering whether the evidence is sufficient to sustain a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 35 So. 3d 480, 485 (¶16) (Miss. 2010). Where the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is to reverse and render. *Id*. However, if "reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence is sufficient, and the conviction should be sustained. *Id*.

¶10.    Christopher was indicted on two counts of armed robbery pursuant to Mississippi Code Annotated section 97-3-79 (Rev. 2014). Under section 97-3-79, the State was required to prove the following elements beyond a reasonable doubt: "(1) a felonious taking or attempt to take (2) from the person or from the presence (3) the personal property of another (4) against his will (5) by violence to his person or by putting him in fear or immediate injury to his person by the exhibition of a deadly weapon." *Lewis v. State*, 112 So. 3d 1092, 1095 (¶9) (Miss. Ct. App. 2013) (internal quotation marks omitted) (citing Miss. Code Ann. § 97-3-79).

¶11.    Christopher was further indicted on one count of felony fleeing or eluding a law

enforcement officer in a motor vehicle. Pursuant to Mississippi Code Annotated section 97-9-72(2) (Rev. 2014), the driver of a motor vehicle who fails to obey a signal by a law enforcement officer directing the driver to bring his motor vehicle to a stop and who is "operating [the] motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indifference to the value of human life" is guilty of felony fleeing or eluding a law enforcement officer in a motor vehicle.

¶12.   Christopher asserts that "[n]o reasonable juror could have found that the crimes of armed robbery or felony eluding occurred in the matter at hand." He claims that "[t]he State's contention[s] . . . rest[] solely upon inferences and circumstantial evidence that are full of doubt." We disagree.

¶13.   "[A] confession constitutes direct evidence." *Moore v. State*, 787 So. 2d 1282, 1288 (¶18) (Miss. 2001). Moreover, "[o]ne who aids and abets another in the commission of a crime is guilty as a principal." *Hughes v. State*, 983 So. 2d 270, 276 (¶14) (Miss. 2008). "To aid and abet the commission of a felony, 'one must do something that will incite, encourage, or assist the actual perpetrator in the commission of the crime or participate in the design of the felony.'" *Id.* (quoting *Vaughn v. State*, 712 So. 2d 721, 724 (¶11) (Miss. 1998)). "[S]ome degree of participation in the criminal act must be shown in order to establish any criminal liability." *Id.* at 277 (¶16) (quoting *Cochran v. State*, 2 So. 2d 822, 823 (Miss. 1941)).

¶14.   Christopher's statement to law enforcement, which was given after law enforcement

6

*Mirandized*[2] Christopher and was entered as an exhibit at Christopher's trial without objection, is sufficient proof that Christopher "encourage[d] [and] assist[ed]" LaBrandon in the commission of armed robbery and "participate[d] in the design of the felony." *Hughes*, 983 So. 2d at 276 (¶14). Christopher stated that he knew that LaBrandon had been planning to rob a bank for several weeks. On the morning of the armed robbery, LaBrandon asked Christopher if he was "ready." And Christopher told LaBrandon, "[Y]eah." Christopher rode with LaBrandon to Scooba—a town to which Christopher had never been before the day in question. After arriving in Scooba and driving around the bank so that LaBrandon could "scope it out," Christopher and LaBrandon waited in the bank's parking lot for all of the bank's customers to leave. LaBrandon then exited the vehicle and entered the bank with a pistol and a mask over his face. Christopher's statement further shows that he actively participated and assisted LaBrandon in the commission of armed robbery as the driver of the getaway vehicle:

> When he ran into the bank, I got under the wheel and pulled out and went to the corner of the street. By the time I got to the corner, he was coming out of the bank and running across the field towards me. . . . He jumped in on the passenger side and we took off.

¶15. In addition to Christopher's statement, the bank tellers working at the bank that day and a bank customer testified at Christopher's trial, corroborating Christopher's statement and providing evidence to prove the elements of armed robbery. The bank tellers testified that an individual, with a mask over his face, entered the bank and robbed tellers Jones and

---

[2] Christopher initialed and signed a "Rights Form" acknowledging his understanding of his *Miranda* rights and waiving the same. The State entered the Rights Form as an exhibit at trial without Christopher's objection.

Fairchild at gunpoint. The bank customer, Jenkins, testified to seeing two men waiting in the bank's parking lot in LaBrandon's green Lincoln Town Car. Based on the evidence presented at Christopher's trial, "a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Williams*, 35 So. 3d at 485 (¶16).

¶16. The same is true for Christopher's conviction of felony fleeing or eluding a law enforcement officer in a motor vehicle. In Christopher's own words, Christopher sped up as the law enforcement officer was "running blue lights" and pursuing the vehicle that Christopher was driving. After Christopher lost control of the vehicle and "wrecked out," he got out of the vehicle and continued to elude the law enforcement officer. It was only after Christopher heard a gunshot that he stopped running and dropped to the ground.

¶17. We find sufficient evidence was presented to support Christopher's convictions of two counts of armed robbery and one count of fleeing or eluding a law enforcement officer in a motor vehicle. Thus, the circuit court properly denied Christopher's motion for a JNOV.

> II. *Weight of the Evidence*

¶18. Christopher further argues the circuit court erred in denying his motion for a new trial because "the evidence proving him guilty was so weak." "In reviewing the denial of a motion for a new trial based on an objection to the weight of the evidence, this Court will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Kirk v. State*, 160 So. 3d 685, 697 (¶31) (Miss. 2015) (internal quotation marks omitted). The evidence is weighed in the light most favorable to the verdict. *Id*. "A new trial should be granted on the basis of the weight of the evidence 'only in exceptional circumstances, when the evidence weighs

heavily against the jury's verdict.'" *Hughes*, 983 So. 2d at 277 (¶22) (quoting *Wilson v. State*, 936 So. 2d 357, 363 (¶16) (Miss. 2006)).

¶19. The record shows Christopher knew that LaBrandon was going to rob the bank, and Christopher rode with LaBrandon to a bank in Scooba—a town to which Christopher had never been before—with full knowledge of why they were going there. Although Christopher did not go into the bank, exhibit the pistol, and demand the money, he participated in the armed robbery by positioning the getaway vehicle outside the bank and driving LaBrandon away in an attempt to avoid apprehension and arrest. Thus, "one could logically conclude that [Christopher] actively participated in the armed robber[y] as a look out or driver of the getaway car." *Smith v. State*, 904 So. 2d 1154, 1156 (¶8) (Miss. Ct. App. 2004). Accordingly, Christopher is as culpable as LaBrandon. *See Hughes*, 983 So. 2d at 276-77 (¶¶14, 16).

¶20. Considering the evidence presented, we do not find the verdict to be so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Accordingly, the circuit court did not err in denying Christopher's motion for a new trial.

¶21. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**